UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| POCHANART ERICSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-11022-ADB |
| | * | |
| CONAGRA FOODS, INC., CONAGRA | * | |
| BRANDS, INC., and FULL-FILL | * | |
| INDUSTRIES, LLC, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

BURROUGHS, D.J.

Plaintiff Pochanart Ericson ("Plaintiff") brings this action against Defendants Conagra Foods, Inc. ("Foods"), Conagra  Brands, Inc. ("Brands" and, together with Foods, "Conagra"), and Full-Fill Industries, LLC ("Full-Fill," and, collectively with Conagra, "Defendants"), alleging that she was injured by a cooking spray product designed, developed, manufactured, tested, packaged, sold, and distributed by Defendants.  [ECF No. 1 ¶¶ 1–2 ("Compl.")].  Plaintiff asserts multiple state-law tort claims as well as a claim for unfair and deceptive practices under Massachusetts General Laws Chapter 93A.  [Id. ¶¶ 24–173].

Currently before the Court is Defendants' motion to dismiss for lack of personal jurisdiction, and, in the alternative, for failure to state a claim.  [ECF No. 24]  For the reasons set forth below, Defendants' motion to dismiss for lack of personal jurisdiction, [id.], is DENIED.[1] Although the Court lacks personal jurisdiction, the case will be transferred rather than dismissed.

---

[1] Because of the Court's determination that it lacks jurisdiction over Defendants, it will not address their arguments regarding Plaintiff's failure to state a claim.

## I.      BACKGROUND

Most of the following facts are taken from the complaint, [Compl.], the factual allegations of which are assumed to be true when considering a motion to dismiss, Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  In assessing whether personal jurisdiction exists, the Court may also consider "whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).

Plaintiff is a resident of Weymouth, Massachusetts.  [Compl. ¶ 3].  Foods was a Delaware corporation with its principal place of business in Omaha, Nebraska.  [Id. ¶ 4; ECF No. 25 at 12].[2]  Brands is a Delaware corporation with its principal place of business in Chicago, Illinois.  [Compl. ¶¶ 5–7].  Conagra designed, sold, and distributed "various branded and private label [c]ooking [s]prays," including the Chef's Quality Pan Spray ("Cooking Spray") at issue in this action, to retailers nationwide.  [Id. ¶¶ 13, 26].  Full-Fill is an Illinois corporation, with its principal place of business in Henning, Illinois.  [Id. ¶ 9].  Full-Fill manufactured the Cooking Spray cans for Conagra by "fill[ing], assembl[ing] and packag[ing] vented DOT-2Q cooking spray cans" and "performed various performance, tolerance and control testing on the products." [Id. ¶ 16].  Conagra then sold the Cooking Spray exclusively to the New York-based company Jetro Holdings, Inc. ("Jetro"), or to one of Jetro's subsidiaries (including Restaurant Depot, LLC,

---

[2] Foods ceased to operate as an independent entity and became a registered trade name of Brands, its successor-in-interest.  [Compl. ¶¶ 4–6].

R.D. Enterprises, and RD/JET, LLC), which are also based in New York. [ECF No. 25-1 ¶ 8 ("Schlewitt Decl.")]. Neither Jetro nor any of its subsidiaries are parties to this action.

At some point prior to June 3, 2017, Plaintiff purchased the Cooking Spray at the Restaurant Depot store in Avon, Massachusetts. [ECF No. 26-2 ¶ 2]. On June 3, 2017, she was working in a food truck in Worcester, Massachusetts when the Cooking Spray "suddenly and without warning began spraying its extremely flammable contents through the u-shaped vents on the bottom of the can causing a flash fire, flames and/or explosion causing burns and injuries to Plaintiff." [Compl. ¶¶ 20–23]. Plaintiff asserts that "the [] Cooking Spray was some distance away from a heat source in [the] food truck" and that she used reasonable care when handling it. [Id. ¶¶ 20–21].

In support of their motion, Defendants filed declarations from Todd Schlewitt, a Category Marketing Manager with Brands, and Chad Steinbaugh, a General Manager at Full-Fill. [Schlewitt Decl.; ECF No. 25-2 ("Steinbaugh Decl.")]. Plaintiff does not dispute the facts contained in the declarations and the Court therefore accepts them as true. See Baskin-Robbins, 825 F.3d at 34. According to Schlewitt's declaration, Conagra has no business activities related to Plaintiff's claim in Massachusetts. [Schlewitt Decl. ¶ 5]. "Any work in which Conagra was involved relating to the design, labeling, marketing, or manufacturing took place in states other than the Commonwealth of Massachusetts," and after it sends the Cooking Spray to Jetro, "Conagra does not further control, direct, or have any say in whether, or if, the product is resold or where." [Schlewitt Decl. ¶¶ 7, 9]. Similarly, "[n]o aspect of Full-Fill's work relating to [] Cooking Spray takes place in Massachusetts," "Full-Fill does not have any business activities in

Massachusetts related to the incident at issue in this case," and "Full-Fill did not sell or distribute [the] Cooking Spray in Massachusetts." [Steinbaugh Decl. ¶¶ 7–8].

In sum, the Defendants made the Cooking Spray in Illinois and then sold it to a distributor in New York. Without further input or direction from Defendants, the distributor, a non-party, sold the Cooking spray nationwide, including in Massachusetts. Plaintiff purchased the Cooking Spray in Massachusetts and was injured here.

Plaintiff filed this lawsuit against Defendants on May 28, 2020. [Compl.]. On July 24, 2020, Defendants moved to dismiss. [ECF No. 24]. Plaintiff opposed, [ECF No. 26], and Defendants replied, [ECF No. 31].

## II.     LEGAL STANDARD

Personal jurisdiction refers to a court's "power to require the parties to obey its [orders]." Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)). "A plaintiff consents to the personal jurisdiction of a court by bringing suit in that court." Roberts v. Jack L. Marcus Co., No. 17-cv-11782, 2018 U.S. Dist. LEXIS 6373, at *4 (D. Mass. Jan. 16, 2018) (citing Adam v. Saenger, 303 U.S. 59, 67 (1938)). As to a defendant, however, the Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471−72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). Therefore, a court may not assert jurisdiction over a defendant unless "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). In addition to satisfying Due Process concerns, "[t]o establish personal

4

jurisdiction in a diversity case, a plaintiff must satisfy . . . the forum state's long-arm statute

. . . ." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014)

(citing Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).

　　　As a rule, a plaintiff bears the burden of establishing a court's personal jurisdiction over a

defendant. Daynard, 290 F.3d at 50. Under the "prima facie" standard for determining whether

a plaintiff has met this burden, "the inquiry is whether the plaintiff has proffered evidence which,

if credited, is sufficient to support findings of all facts essential to personal jurisdiction."

Bluetarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 79 (1st Cir. 2013) (quoting Phillips v.

Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). Plaintiffs may not, however, establish a

court's personal jurisdiction over defendants with "unsupported allegations in [the] pleadings,"

and are instead "obliged to adduce evidence of specific facts." Platten v. H.G. Berm. Exempted

Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (first quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671,

675 (1st Cir. 1992); then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138,

145 (1st Cir. 1995)). The Court may also "add to the mix facts put forward by the defendants, to

the extent that they are uncontradicted." Daynard, 290 F.3d at 51 (quoting Mass. Sch. of Law at

Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

　　　"Because the [Massachusetts] long-arm statute imposes specific constraints on the

exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a

determination under the long-arm statute is to precede consideration of the constitutional

question." SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017). Section 3 of the

Massachusetts long-arm statute allows for the exercise of "personal jurisdiction over a person,

who acts directly or by an agent, as to a cause of action in law or equity arising from" various

activities within or outside of the Commonwealth. Mass. Gen. Laws ch. 223A, § 3.

III.     DISCUSSION

Defendants argue that Plaintiff has failed to allege sufficient contacts between

Defendants and Massachusetts to establish personal jurisdiction.  [ECF No. 25 at 6–7, 12–15].

In support, they assert that neither Conagra nor Full-Fill has business activities in Massachusetts

that are related to Plaintiff's claim or to the Cooking Spray and deny any involvement in the final

distribution and sale of the Cooking Spray after it is sent to Jetro.  [Schlewitt Decl. ¶¶ 1, 7, 9;

Steinbaugh Decl. ¶¶ 7–8].

Plaintiff contends that she has satisfied the requirements of both the Massachusetts

long-arm statute and the Due Process clause.  [ECF No. 26 at 3–8].  Specifically, she asserts that

Defendants placed the Cooking Spray into the stream of commerce by selling it to a national

distributor, Jetro, who ultimately sold it through Restaurant Depot to Plaintiff at a store in

Massachusetts.  [Id. at 5–6].  Therefore, Plaintiff argues, it can be presumed "from this ongoing

relationship with Jetro Holdings and other contacts with the state that Defendants knew or

reasonably could have foreseen and expected that the Cooking Spray would be sold in

Massachusetts."  [Id. at 6].

A.     Massachusetts Long-Arm Statute

Plaintiff asserts that personal jurisdiction is proper under § 3(d) of the Massachusetts

long-arm statute, [ECF No. 26 at 3], which states that

> [a] court may exercise personal jurisdiction over a person, who acts directly or by
> an agent, as to a cause of action in law or equity arising from the person's . . .
> causing tortious injury in this commonwealth by an act or omission outside this
> commonwealth if he regularly does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial revenue from goods used or
> consumed or services rendered, in this commonwealth.

Mass. Gen. Laws ch. 223A, § 3(d).  Section 3(d) is the Massachusetts long-arm statute's general

personal jurisdiction provision and is applicable only if the defendant is subject to general

6

personal jurisdiction in Massachusetts.  See Pettengill v. Curtis, 584 F. Supp. 2d 348, 357 (D.

Mass. 2008) ("§ 3(d) would only apply if general jurisdiction existed over the . . .

[d]efendants."); Krua v. Sirleaf, No. 18-cv-10574, 2019 WL 1936733, at *4 (D. Mass. May 1,

2019) ("[Plaintiffs] have also not alleged sufficient facts to establish general jurisdiction . . .

which is necessary for jurisdiction under § 3(d)." (citing Pettengill, 584 F. Supp. 2d at 357)); see

also Wright v. Ruberto, Israel & Weiner, P.C., No. 18-cv-001434A, 2019 WL 2895580, *5

(Mass. Super. Ct. May 28, 2019) (noting that § 3(d) is a general jurisdiction provision designed

to subject defendants who "conduct substantial business within the Commonwealth" to

Massachusetts' courts' jurisdiction for any and all claims).

      In support of jurisdiction, Plaintiff asserts that "Defendants transact business in the

Commonwealth of Massachusetts," [Compl. ¶ 11], identifies the Cooking Spray as having been

sold to her as a "Featured Brand," and then asks the Court to draw the "easy inference that sales

of a featured brand at the Massachusetts locations of a national retailer are not insubstantial as a

matter of law."  [ECF No. 26 at 2–3].  This combination of allegation and argument is not

sufficient to establish that this Court has general personal jurisdiction over Defendants.  First,

Plaintiff does not allege that Defendants "regularly [do] or [solicit] business" or engage in

another "persistent course of conduct" in Massachusetts.  See Mass. Gen. Laws ch. 223A, § 3(d).

Nor does she adequately assert that Defendants derive substantial revenue from goods sold in the

Commonwealth; she makes no allegations regarding how Defendants derive revenue, how much

revenue they derive, and from where they derive that revenue.  See id.  Although the test for

determining whether revenue is "substantial" is lenient and does not require that a certain

absolute sales threshold or percentage of sales be met, see Keds Corp. v. Renee Int'l. Trading

Corp., 888 F.3d 215, 219 (1st Cir. 1989),[3] Plaintiff cannot satisfy the statutory requirement based

solely on unsupported assertions and inferences, see Platten, 437 F.3d at 134.

      In sum, Plaintiff has not alleged sufficient contacts between Defendants and

Massachusetts to establish that this Court has personal jurisdiction over Defendants under the

Massachusetts long-arm statute.[4]  Although the Court could end its jurisdictional analysis here,

see Whitley v. Linde Heavy Truck Div. Ltd., No. 16-cv-10005, 2018 WL 2465360, at *5 (D.

Mass. June 1, 2018) (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)), in the

---

[3] The Court notes that given the Supremacy Clause, the Massachusetts long-arm statute cannot permit jurisdiction where it would not be constitutionally permissible.  As other courts have observed, see, e.g., Anaqua, Inc. v. Bullard, No. 14-cv-01491, 2014 WL 10542986, *6 n.5, (Mass. Super. Ct. July 24, 2014), there is an inherent tension between the lax standard that courts apply for purposes of establishing general jurisdiction under § 3(d) and the relatively strict standard that courts apply for purposes of general jurisdiction under the Constitution.  Compare Keds, 888 F.3d at 219, with Daimler AG v. Bauman, 571 U.S. 117, 137–39 (2014).  Here, the tension is of no consequence because Plaintiff is unable to meet her burden even under the more lenient standard.

[4] The Court finds that Plaintiff also cannot establish jurisdiction under § 3(a) of the Massachusetts long-arm statute because she does not allege that the "business" Defendants "transact" in Massachusetts, [Compl. ¶ 11], is in any way connected to her claim.  More specifically, although Plaintiff alleges that Defendants sold the Cooking Spray to a non-party middle-man who, in turn, sold it nationwide, including to her in a store in Massachusetts, there is no evidence of any contacts between Defendants and Massachusetts as required by § 3(a), such as evidence that Defendants solicited business in the Commonwealth.  See Tatro v. Manor Care, Inc., 625 N.E.2d 549, 554 (Mass. 1994) (finding that jurisdiction under § 3(a) was proper when the defendant solicited customers in Massachusetts); see also Doucet v. FCA US LLC, No. 19-cv-10514, 2020 WL 128655, at *5 (D. Mass. Jan. 10, 2020) (finding personal jurisdiction under § 3(a) where defendant knowingly and deliberately solicited the business of Massachusetts residents through sales made at a specific Massachusetts auto dealership).  Here, in fact, once Conagra sells the Cooking Spray to Jetro, it "does not further control, direct, or have any say in whether, or if, the product is resold or where," [Schlewitt Decl. ¶ 9], and Full-Fill does not sell or distribute the Cooking Spray in Massachusetts, [Steinbaugh Decl. ¶ 8].  While Defendants may have been aware that their Cooking Spray might be purchased in Massachusetts, awareness alone does not constitute the type of "deliberate, as distinguished from fortuitous" contacts required by the "transacting business" requirement of § 3(a).  Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997).

interests of a thorough record, it will nevertheless analyze whether exercising personal jurisdiction over Defendants would be constitutionally permissible.

### B. Constitutional Analysis

Even if the Massachusetts long-arm statute permitted the Court to exercise jurisdiction, the Court would still lack jurisdiction under the Due Process Clause of the Fourteenth Amendment. Courts may exercise two types of personal jurisdiction under the Fourteenth Amendment: general and specific. "[G]eneral jurisdiction requires affiliations 'so "continuous and systematic" as to render [a person] essentially at home in the forum State.'" Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Here, Defendants are neither incorporated in Massachusetts nor do they have their principal place of business here, [Schlewitz Decl. ¶ 3; Steinbaugh Decl. ¶¶ 4–5], and Plaintiff has not alleged that Defendants have any other contacts with Massachusetts that are "so 'continuous and systematic' as to render [Defendants] essentially at home in [Massachusetts]," Daimler, 571 U.S. at 137, 139 (quoting Goodyear, 564 U.S. at 919). Therefore, Plaintiff's only remaining jurisdictional hook is specific personal jurisdiction.

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (quoting Mass. Sch. of Law at Andover, Inc., 142 F.3d at 34). For the Court to exercise specific personal jurisdiction over Defendants consistent with the Due Process Clause, Plaintiff must demonstrate that each of three conditions is satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

Daynard, 290 F.3d at 60 (quoting Foster-Miller, 46 F.3d at 144). The inquiry "is 'not susceptible [to] mechanical application,'" PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019) (quoting Kulko v. Superior Ct. of Cal., 436 U.S. 84, 92 (1978)), rather, "[e]ach case requires an individualized weighing of the material facts," United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) (quoting Burger King Corp., 471 U.S. at 485–86).

1.    Relatedness

To satisfy the relatedness requirement, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." Foster-Miller, 46 F.3d at 144 (quoting United Elec., 960 F.2d at 1089). In assessing relatedness in a tort action, the Court considers "whether the plaintiff has established cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20–21 (1st Cir. 2018) (citations and internal quotation marks omitted). "The relatedness standard is a 'flexible, relaxed standard,' which focuses on the 'nexus between the defendant's contacts and the plaintiff's cause of action.'" Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007) (internal citations omitted).

There is no nexus between Defendants' forum-state activities and Plaintiff's cause of action because Defendants did not have any relevant forum-state activities. Based on the facts alleged in the complaint and contained in Defendants' declarations, Defendants manufactured a defective can of the Cooking Spray in Illinois and sold it to Jetro in New York. That is the extent of Defendants' conduct. Those acts do not demonstrate any contact with Massachusetts, much less contact sufficient to establish personal jurisdiction. The fact that the allegedly

10

defective can was ultimately sold to Plaintiff in Massachusetts is of no consequence. The single allegation in the complaint as to Defendants' contacts with Massachusetts, that they "transact business in the Commonwealth of Massachusetts," [Compl. ¶ 11], is vague and Plaintiff does not even attempt to connect this generic "business" with her claims in this action. Moreover, although the Court held in Doucet v. FCA US LLC that "[t]he sale of a defective or harmful product within the forum is sufficiently related to a foreign defendant's in-forum activities to establish jurisdiction," that case was factually distinguishable because that defendant sold cars to a dealership in Massachusetts. No. 19-cv-10514, 2020 WL 128655, at *6 (D. Mass. Jan. 10, 2020). Here, Defendants sold the Cooking Spray to a New York distributor and Plaintiff has made no allegations that Defendants otherwise solicited Massachusetts customers. Accordingly, Plaintiff has failed to meet her burden on this prong.

### 2.    Purposeful Availment

The Court must next determine whether Defendants' conduct "represent[s] a purposeful availment of the privilege of conducting activities in [Massachusetts]." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 66 (D. Mass. 2001) (quoting United Elec., 960 F.2d at 1089). For Defendants to have purposefully availed themselves of the privilege of conducting activities in Massachusetts, their contacts with Massachusetts must be voluntary, so that "jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state," Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 245 (D. Mass. 2012) (internal citation omitted), and foreseeable, such that they should "reasonably anticipate being haled into court" in Massachusetts, Phillips, 530 F.3d at 28 (quoting Adelson, 510 F.3d at 50). "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant [itself].'" Id.

(quoting Burger King Corp., 471 U.S. at 475). Those contacts "must be deliberate, and 'not based on the unilateral actions of another party.'" Id. (quoting Adelson, 510 F.3d at 50).

As discussed above, Defendants had no contacts with Massachusetts related to Plaintiff's claim. For that reason, Defendants correctly characterize the sale of the Cooking Spray in Massachusetts as being involuntary: once the Cooking Spray is sold to Jetro, Conagra "does not further control, direct, or have any say in whether, or if, the product is resold or where," [Schlewitt Decl. ¶ 9], and "Full-Fill did not sell or distribute [the] Cooking Spray in Massachusetts," [Steinbaugh Decl. ¶ 8]. Plaintiff attempts to rebut that argument by presenting a stream of commerce theory: Defendants "presumably knew that the Cooking Spray would be distributed and sold in Massachusetts, as Restaurant Depot is a nationwide seller, and there is no evidence that Defendants made any attempt to limit the territory to which Restaurant Depot sold the Cooking Spray." [ECF No. 26 at 5].

The Supreme Court considered this issue in Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102 (1987). In Part II–A of the Opinion, writing for a plurality of four (Chief Justice Rehnquist, Justice Powell, Justice Scalia, and herself), Justice O'Connor held that a defendant's placement of a product into the stream of commerce with the awareness that it may eventually get swept into the forum state, without more, is not an act of the defendant purposefully directed toward the forum state. Id. at 112. Justice O'Connor's requirement of "more" has been described as the "stream of commerce plus" standard, under which, in order to satisfy the purposeful availment requirement based on a stream of commerce theory, a plaintiff must allege "additional conduct of the defendant . . . indicat[ing] an intent or purpose to serve the market in the forum State" beyond simply placing a product in the stream of commerce. Newman v. European Aeronautic Defence & Space Co.

EADS N.V., No. 09-cv-10138, 2011 WL 2413792 (D. Mass. June 16, 2011) (alteration in

original) (quoting Asahi, 480 U.S. at 112); see Micheli v. Techtronic Indus., Co, No.

11-cv-10503, 2012 WL 6087383, at *9–10 (D. Mass. Mar. 1, 2013).  In Asahi, Justice O'Connor

provided examples of additional conduct, or plus factors, that could tip the scales in favor of

jurisdiction, such as "designing the product for the market in the forum State, advertising in the

forum State, establishing channels for providing regular advice to customers in the forum State,

or marketing the product through a distributor who has agreed to serve as the sales agent in the

forum State."  480 U.S. at 112 (plurality opinion).

Here, Plaintiff alleges no facts suggesting the presence of any "plus factors" to support

her stream of commerce argument.  She does not allege that Defendants designed the Cooking

Spray with Massachusetts consumers in mind, advertised the Cooking Spray in Massachusetts,

established any channel for communication with Massachusetts consumers, or specifically sold

the Cooking Spray to Jetro because Jetro had any particular ability or intention to sell it in

Massachusetts.  See Asahi, 480 U.S. at 112 (plurality opinion).  Although Plaintiff asserts that

the Cooking Spray was listed as a "Featured Brand" by the Restaurant Depot where she bought

it,[5]  [ECF No. 26 at 5], she does not explain the significance of the "Featured Brand" moniker or

what role, if any, Defendants played in giving "Featured Brand" status to the Cooking Spray.

See [id.].  As noted above, Defendants maintain that they had no further involvement with the

Cooking Spray after they sold it to Jetro.  See [Schlewitt Decl. ¶ 9].

Courts in this circuit have consistently (and recently) concluded that plaintiffs' arguments

regarding purposeful availment under a stream of commerce theory fail when they do not allege

---

[5] Elsewhere in her briefings, Plaintiff states in a conclusory manner that Defendants have
non-specific "other contacts with the state."  [ECF No. 26 at 6].

sufficient plus factors.  See, e.g., Boit, 967 F.2d at 683 ("[M]ere awareness that a product may end up in the forum state does not constitute purposeful availment."); Pajak v. Rohm & Haas Co., 387 F. Supp. 3d 138, 144 (D. Mass. 2019) (rejecting a bare "channels of commerce" argument for purposeful availment where plaintiff did not present any facts to "to support that [defendant] meaningfully and purposefully directed the allegedly defective [products] into Massachusetts (for example by designing [them] for or selling, advertising or marketing them to customers in Massachusetts)").  In Estate of Rosario v. Falken Tire Corp., the court concluded that it did not have personal jurisdiction over the defendant, a tire manufacturer, where plaintiff had only shown a distribution chain in which the manufacturer sold the defective tire to a national distributor who, in turn, sold it to a store in Puerto Rico, where the plaintiff purchased it. 109 F. Supp. 3d 485, 496 (D.P.R. 2015).  Given the factual similarities between Rosario and this case, this Court finds that the "distribution chain [alleged by Plaintiff] merely indicates incidental contacts based on the actions of third parties," which does not establish jurisdiction.  Id.; see also Knox v. MetalForming, Inc., 914 F.3d 685, 691–93 (1st Cir. 2019) (holding that regular course of sales, without more, is insufficient to establish jurisdiction); cf. Walden v. Fiore, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").  Accordingly, Plaintiff has not demonstrated that Defendants purposefully availed themselves of the privilege of conducting business in Massachusetts.

3.    Reasonableness

The First Circuit has identified the following "Gestalt factors" to guide the reasonableness inquiry:

(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and

effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Pritzker v. Yari, 42 F.3d 53, 63–64 (1st Cir. 1994) (quoting United Elec., 960 F.2d at 1088). Because the first two prongs have not been met, the Court addresses each Gestalt factor only briefly.  See Ticketmaster-N.Y., 26 F.3d at 210.

As to the first factor, although Defendants, as out-of-state corporations, would be burdened by litigating in Massachusetts, the First Circuit has recognized that "it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction," and Defendants have not identified any unique circumstances that would make it unduly burdensome.  See Nowak ex rel. Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 718 (1st Cir. 1996).  Second, Massachusetts has a strong interest in "ensuring its own citizens have an effective forum to seek compensation for personal injuries," which favors exercising jurisdiction.  Doucet, 2020 WL 128655, at *7. Regarding the third factor, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience."  Sawtelle, 70 F.3d at 1395.  Plaintiff is a resident of Massachusetts and adjudicating this dispute in another state, such as Illinois where both Defendants have their principal places of business, see [Compl. ¶¶ 5–7, 9], would be inconvenient for her.  Still, considering the fourth factor, the most effective resolution of this matter is not likely through adjudication in this forum when Defendants are located in Illinois and there are documents and witnesses in Illinois.  Finally, "the common interests of all sovereigns in promoting substantive social policies may afford the exercise of jurisdiction in Massachusetts some weight, insofar as Massachusetts has an interest in ensuring that products sold within its borders are safe for use by consumers."  Doucet, 2020 WL 128655, at *8 (citation and internal quotation marks omitted).  On the whole, the Gestalt factors suggest that it would not be unreasonable for the Court to exercise jurisdiction over Defendants.

4.    Summary

Because Plaintiff has failed to meet her burden on the relatedness and purposeful availment prongs, even though exercising jurisdiction over Defendants would not be unreasonable, she has failed to "proffer[] evidence which, if credited, [would be] sufficient to support findings of all facts essential to personal jurisdiction." Bluetarp Fin., Inc., 709 F.3d at 79 (quoting Phillips, 530 F.3d at 26). The Court therefore finds that exercise of personal jurisdiction over Defendant is constitutionally improper.

**C.    Jurisdictional Discovery**

Plaintiff urges the Court to permit jurisdictional discovery if it finds her allegations insufficient to support personal jurisdiction over Defendants. [ECF No. 26 at 8–9]. Specifically, Plaintiff seeks "Defendants' internal financial and other information showing the scope and extent of their contacts and revenues generated in the Commonwealth of Massachusetts." [Id. at 8]. Further, she states that she "requires jurisdictional discovery to determine the volume and amount of Defendants' sales of Cooking Spray in Massachusetts." [Id. at 5]. Defendants maintain that jurisdictional discovery is inappropriate here because Plaintiff does not contest the facts contained in Defendants' declarations, which establish their lack of relevant contacts with Massachusetts, and jurisdictional discovery would merely be a "fishing expedition" that would not "yield any facts to establish personal jurisdiction." [ECF No. 31 at 7 (referencing Sun Life Assur. Co. of Can. v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 193 (D. Mass. 2012)]. The Court agrees with Defendants.

The First Circuit has "long held that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a

16

jurisdictional defense.'"  Swiss Am. Bank, 274 F.3d at 625 (quoting Sunview Condo. Ass'n v.

Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir.1997)).  "However, that entitlement is not

absolute. . . .  [E]ven when the plaintiff has been diligent and has made a colorable claim for

personal jurisdiction, the district court still has broad discretion to decide whether discovery is

required."  Id. at 625–26 (internal citations and quotation marks omitted).  Further, "[i]n addition

to making a colorable claim, it is also incumbent upon the plaintiff to 'present facts to the court

which show why jurisdiction would be found if discovery were permitted.'"  Rain ex rel.

Crandall v. Conn. Gen. Corp. No. 17-cv-30115, 2019 WL 7604856, at *7 (D. Mass. Aug. 6,

2019) (quoting Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007)).

"Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a

jurisdictional discovery request can be fatal to that request."  Swiss Am. Bank, 274 F.3d at

626–27.  Courts in this district have routinely denied jurisdictional discovery requests where

plaintiffs fail to allege facts demonstrating that jurisdiction would be found if discovery were

permitted or where plaintiffs have failed to identify with specificity what information they seek.

See Rain, 2019 WL 7604856, at *7; TargetSmart Holdings, LLC v. GHP Advisors, LLC, 366 F.

Supp. 3d 195, 215 (D. Mass. 2019) (denying jurisdictional discovery where plaintiff gave "no

clear indication of what it expects, or even hopes, to uncover through this process that would

shed further light on the claims in its complaint"); Mullane v. Breaking Media, Inc., No.

18-cv-12618, 2019 U.S. Dist. LEXIS 193270, at *32 (D. Mass Aug. 13, 2019) ("Although

[plaintiff] states in his motion that allowing discovery could assist him with establishing personal

jurisdiction under Mass. Gen. Laws ch. 223A, § 3(d), he stops short of outlining what

information he would seek.  This court need proceed no further."); Sun Life Assur. Co., 946 F.

Supp. 2d at 193 (denying jurisdictional discovery where plaintiffs did not allege "that these

contacts will be based entirely, or even mostly, in Massachusetts or that they will be sufficient to meet the jurisdictional requirements"); Barrett v. H&R Block, Inc., 652 F. Supp. 2d 104, 116 (D. Mass. 2009) (denying jurisdictional discovery where "plaintiffs generally request[ed] discovery without any indication of the specific information they would seek or expect to find that would establish personal jurisdiction").

Here, Plaintiff has failed to make "a colorable case for the existence of *in personam* jurisdiction" and the Court declines to exercise its discretion to grant jurisdictional discovery. Swiss Am. Bank, 274 F.3d at 625 (internal citations and quotation marks omitted). Plaintiff has not sufficiently demonstrated that facts supporting the exercise of jurisdiction would be found were discovery permitted. See generally [ECF No. 26]. Further, in asking broadly for "internal financial and other information showing the scope and extent of their contacts and revenues generated in the Commonwealth of Massachusetts," [id. at 8], she has failed to identify with sufficient specificity the information she seeks. See Rain, 2019 WL 7604856, at *7. Moreover, Defendants made sworn statements that (1) "[n]o aspect of Conagra's work relating to [the Cooking] Spray takes place in the Commonwealth of Massachusetts"; (2) "Conagra does not have any business activities in Massachusetts related to the incident at issue in this case"; (3) the Cooking Spray is "contained in a can that is both manufactured and filled in the state of Illinois"; (4) "[a]ny work in which Conagra was involved relating to the design, labeling, marketing, or manufacturing took place in states other than the Commonwealth of Massachusetts"; (5) "[a]fter [the Cooking] Spray is sent to Jetro [] or its subsidiaries, Conagra does not further control, direct, or have any say in whether, or if, the product is resold or where"; (6) "Full-Fill assembles and fills [the] Cooking Spray [] per Conagra's specifications at its plant in Henning, Illinois . . . [and] also performs certain testing with respect to [the Cooking Spray] at its plant in Henning,

Illinois"; (7) "[n]o aspect of Full-Fill's work relating to [the] Cooking Spray takes place in Massachusetts"; (8) Full-Fill does not have any business activities in Massachusetts related to the incident at issue in this case"; and (9) Full-Fill did not sell or distribute [the] Cooking Spray in Massachusetts." [Schlewitt Decl. ¶¶ 5, 7, 9; Steinbaugh Decl. ¶¶ 6–8]. Given those uncontested facts, it is highly unlikely that jurisdiction will lie even if jurisdictional discovery were granted.

To support her argument, Plaintiff cites Pajak, [ECF No. 26 at 7], a case in which the court granted jurisdictional discovery. In Pajak, however, the plaintiff had not yet established that the defendant actually manufactured the allegedly defective product at issue. 387 F. Supp. 3d at 144. The court granted jurisdictional discovery because resolving the identification issue was necessary before the court could even evaluate the plaintiff's claim. Id. at 145 ("Without a sufficient identification of the product in the complaint, it is impossible [for defendant] (and this Court) to determine whether that defendant actually directed the container to a customer in Massachusetts or whether it ended up in the forum fortuitously."). There is no such identification issue here.

In short, as Defendants note, Plaintiff's request for jurisdictional discovery amounts to little more than a "fishing expedition" that is unlikely to "yield any significant new jurisdictional facts." Sun Life Assur. Co., 946 F. Supp. 2d at 193. Therefore, her request for jurisdictional discovery is denied.

**D.      Transfer**

Under 28 U.S.C. § 1631, a district court should transfer a case to another district to cure a lack of jurisdiction:

> [w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall

proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. "The First Circuit has interpreted this provision to establish a presumption in favor of transfer—rather than dismissal—when the forum court lacks personal jurisdiction over one of the defendants." TargetSmart Holdings, 366 F. Supp. 3d at 214 (citing Fed. Home Loan Bank of Bos. v. Moody's Corp., 821 F.3d 102, 119 (1st Cir. 2016)); see also Britell v. United States, 318 F.3d 70, 73 (1st Cir. 2003) ("Congress's use of the phrase 'shall . . . transfer' in section 1631 persuasively indicates that transfer, rather than dismissal, is the option of choice.").

      1.    Venue

To determine whether transfer of this case is appropriate and, if so, where it should be transferred to, the Court must consider the issue of venue.

"[T]he term 'venue' refers to the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts." 28 U.S.C. § 1390(a). "[T]he general purpose of the venue rules is 'to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial.'" Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (alteration in original) (quoting Leroy v. Great W. United Corp., 443 U.S. 173, 183–84 (1979)). The general venue statute provides that a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

"'[A]mple authority' exists that the burden of establishing venue is on the plaintiff." <u>Gill v. Nakamura</u>, No. 14-cv-13621, 2015 WL 5074475, at *2 (D. Mass. July 24, 2015) (citing <u>Cordis Corp. v. Cardiac Pacemakers</u>, 599 F.2d 1085, 1086 (1st Cir. 1979)). Because the Court has found that it does not have personal jurisdiction over Defendants, venue is improper in this judicial district. <u>See</u> <u>Moore v. S.N.H. Med. Ctr.</u>, No. 08-cv-11751, 2009 WL 5214879, at *10 (D. Mass. Aug. 18, 2009) ("[Corporate defendant] is not subject to personal jurisdiction, and therefore does not reside, in Massachusetts. Accordingly, venue . . . in Massachusetts is inappropriate.").

Similar to § 1631, under 28 U.S.C. § 1406(a), a district court may "'transfer [a] case to any district or division in which it could have been brought' if it 'lay[s] venue in the wrong division or district' and transfer is 'in the interest of justice.'" <u>TargetSmart Holdings</u>, 366 F. Supp. 3d at 214 (alterations in original) (citing 28 U.S.C. § 1406(a)). Although § 1406 "does not explicitly mention jurisdiction, the Supreme Court has interpreted its mandate to 'authorize transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed has personal jurisdiction over the defendants or not.'" <u>Id.</u> (quoting <u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463, 466 (1962)).

Both § 1406 and § 1631 support transfer over dismissal in the interests of justice and to promote judicial economy. <u>See</u> <u>Britell</u>, 318 F.3d at 74 (stating that the legislative history of § 1631 favors transfer over dismissal of "an action . . . that might thrive elsewhere" as furthering "the salutary policy favoring the resolution of cases on the merits"); <u>TargetSmart Holdings</u>, 366 F. Supp. 3d at 214 (stating that transfer under § 1406 would promote the interest of justice and "facilitate the speedy and efficient resolution of [the] case"). There exists a strong public interest in "prevent[ing] duplicitous litigation that would prove 'wasteful and costly'" which also

supports transfer over dismissal. Britell, 318 F.3d at 74 (quoting S. Rep. No. 97-275, at 11 (1982), reprinted in 1982 U.S.C.C.A.N. 11, 21).

Although Massachusetts is an inappropriate venue, the record contains sufficient facts to indicate that the Northern District of Illinois is an appropriate venue in which to litigate this matter as it is the judicial district where Conagra resides, [Compl. ¶¶ 5, 7], and all Defendants are residents of Illinois, see 28 U.S.C. § 1391(b)(1); [Compl. ¶¶ 5, 7, 9]. For this reason, and because substantive public interests weigh in favor of transfer rather than dismissal of Plaintiff's case, this Court finds it proper and in the interests of justice to transfer this matter to the Northern District of Illinois. See, e.g., Phoenix Ins. Co. v. Cincinnati Indem. Co., No. 16-cv-223S, 2017 WL 3225924, at *6 (D.R.I. Mar. 3, 2017) ("[D]ue to the lack of personal jurisdiction and proper venue in this District and the totality of the circumstances, I conclude that the interests of justice would be better served by transfer of this action . . . than by dismissal under Rules 12(b)(2) and (3) . . . ."), report and recommendation adopted, 2017 WL 2983879 (D.R.I. July 13, 2017).

### E.  Defendant's 12(b)(6) Motion to Dismiss

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430–31 (2007) (citing Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94 (1998)); see Acosta-Ramírez v. Banco Popular de P.R., 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to . . . jurisdiction before addressing the merits of a case."). "Because Plaintiff has not carried [her] burden to establish personal jurisdiction, the court does not address" Defendants' Rule 12(b)(6) motion. Collision Commc'ns, Inc. v. Nokia

Sols. and Networks Oy, No. 19-cv-12251, 2019 WL 5237686, at *11 (D. Mass. Sept. 2, 2020)

(citing Dumitrescu v. DynCorp Int'l, LLC, 257 F. Supp. 3d 13, 16 n.2 (D.D.C. 2017)).

**IV.     CONCLUSION**

Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction, [ECF No. 24], is <u>DENIED</u>.  This action will be transferred to the Northern District of Illinois for further proceedings.

**SO ORDERED.**

November 24, 2020                                    /s/ Allison D. Burroughs
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE